CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED

June 23, 2026

LAURA A. AUSTIN, CLERK
BY: **/s/ Kendra Campbell**
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **ALBER DELCID SANDOVAL, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:26CV00029 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **TERRI ROBINSON, National Benefits Center Director, U.S. Citizenship and Immigration Services, et al.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Courtney E. Moran and Simon Sandoval-Moshenberg,* MURRAY OSORIO *PLLC, Fairfax, Virginia, for Plaintiffs; Matthew G. Howells, Assistant United States Attorney, Roanoke, Virginia, for Defendants.*

The plaintiffs, a U.S. citizen and her noncitizen husband, filed this suit under the Administrative Procedure Act (APA) and the Mandamus Act, alleging that the U.S. Citizenship and Immigration Services (USCIS) has unreasonably delayed adjudication of their immigration proceedings. The defendants moved to strike the plaintiffs' first amended complaint, and alternatively, to dismiss the case for lack of subject-matter jurisdiction and failure to state an actionable claim. I have orally denied both of the defendants' motions and this opinion sets forth my reasoning.

I. BACKGROUND.

An eligible noncitizen spouse of a U.S. citizen may obtain lawful permanent resident status in the United States.[1]  8 U.S.C. § 1255(a); 8 C.F.R. § 204.1(a)(1).  The U.S. citizen spouse may file an I–130 Petition for Alien Relative with USCIS on behalf of the noncitizen spouse.  8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. § 204.2(a)(1).  The noncitizen spouse concurrently files an I–485 Application to Register Permanent Residence or Adjust Status with USCIS.  § 1255(a); 8 C.F.R. § 245.2(a)(2)(i)(B).

On November 22, 2024, plaintiff Carrie Marie Mohr, a U.S. citizen, filed an I–130 petition with USCIS on behalf of her noncitizen husband, plaintiff Alber Delcid Sandoval.  That same day, plaintiff Sandoval filed an I–485 application for adjustment of status.  On February 11, 2026, the plaintiffs filed this action pursuant to the APA and the Mandamus Act against Terri Robinson, the National Benefits Center Director of USCIS, and Joseph Edlow, the Director of USCIS.[2]  The plaintiffs challenged the reasonableness of USCIS's delay in adjudication and sought to compel the agency to adjudicate their immigration forms within 30 days.

---

[1]  Colloquially called obtaining a "green card."

[2]  Both defendants are sued in their official capacities.

The defendants moved to dismiss the case on April 16, 2026, alleging a lack of subject-matter jurisdiction and failure to state a claim. Dkt. No. 4. Shortly thereafter, USCIS sent plaintiff Sandoval a request for both plaintiffs to appear for an interview.[3] On April 28, 2026, the plaintiffs filed their first amended complaint (FAC). Dkt. No. 7. The defendants then moved to strike the FAC and alternatively moved again to dismiss the case on the same grounds raised in their initial motion. Dkt. No. 8. The parties argued the pending motions on May 26, 2026, and at the end of the hearing I orally denied the defendants' motions to dismiss and strike. Oral Order, Dkt. No. 17. On May 28, 2026, the plaintiffs were interviewed by USCIS regarding their pending proceedings. Pls.' Status Report 1, Dkt. No. 20 (June 1, 2026).

On June 4, 2026, USCIS approved plaintiff Mohr's I–130 petition, but plaintiff Sandoval's I–485 application remains pending. Pls.' Status Report 2, Dkt. No. 21 (June 11, 2026). The plaintiffs assert that USCIS has failed to provide them with a projected final adjudication timeline, and that the 180-day period within which USCIS should process immigrant benefit applications has lapsed.[4]

---

[3] The plaintiffs assert that, after the interview was scheduled, they proposed staying the present litigation to allow USCIS time to adjudicate their petition and application, but the defendants would not agree.

[4] According to 8 U.S.C. § 1571(b), "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."

This opinion elaborates on the reasons for my previous oral order denying the defendants' motions.

## II. STANDARDS OF REVIEW.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). To survive a motion to dismiss, the plaintiff must state "a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based on its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). When considering a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Although a complaint need not allege detailed factual allegations to survive a motion to dismiss, it must contain "more than labels and conclusions" and a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

On the other hand, a Rule 12(b)(1) motion challenges the court's authority to proceed with a case, raising a jurisdictional bar. *Cunningham v. Gen. Dynamics Info. Tech. Inc.*, 888 F.3d 640, 649 (4th Cir. 2018). A defendant may challenge a court's subject-matter jurisdiction through raising either a facial or factual challenge. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). When a

defendant asserts that the complaint failed to sufficiently allege facts that support subject-matter jurisdiction, the court must apply the same standard employed in Rule 12(b)(6) motions and assume the veracity of the factual allegations. *Id.* at 193. Conversely, in a factual challenge, the defendant contests the veracity of the facts alleged to support subject-matter jurisdiction. *Id.* In resolving a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.* at 192. The plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

III. DISCUSSION.

A. Motion to Strike.

The defendants contend that the FAC should be stricken as futile and superfluous, arguing that it does not substantively differ from the plaintiffs' initial complaint. They also suggest that the FAC may have been filed in bad faith but fail to support that assertion.

Federal Rule of Civil Procedure 15(a)(1)(B) allows a party to amend its pleading once as a matter of course within 21 days after service of a Rule 12(b) motion. Moreover, the FAC contains additional factual allegations that provide context to the plaintiffs' claims. FAC ¶¶ 22–25, Dkt. No. 7 (discussing potential

consequences that a lack of adjudication may have on the plaintiffs). For these reasons, I denied the motion to strike.

## B. Subject-Matter Jurisdiction.

Next, the defendants raise a factual challenge to this court's jurisdiction. Specifically, the defendants argue that the Immigration and Nationality Act (INA) and the APA preclude judicial review.[5] The INA states:

> [N]o court shall have jurisdiction to review –
>
> (i) any judgment regarding the granting of relief under section . . . 1255 of this title, or
>
> (ii) any other *decision or action* of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the *discretion* of the Attorney General or the Secretary of Homeland Security . . . .

8 U.S.C. § 1252(a)(2)(B) (emphasis added).[6] With respect to the adjustment of status of eligible noncitizens, the INA states that their status "*may* be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe." 8 U.S.C. § 1255(a) (emphasis added). Thus, the defendants contend that the pace

---

[5] Following this court's oral order denying the defendants' motions, the defendants later admitted that this court has jurisdiction over the present matter, subject to the terms and limitations of the APA and Mandamus Act. Answer ¶ 1, Dkt. No. 18.

[6] The authority to adjudicate applications for adjustment of status has been transferred to the Secretary of Homeland Security and the USCIS. *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1162 n.3 (N.D. Cal. 2007) (citing 6 U.S.C. §§ 271(b)(5), 557; 8 C.F.R. § 245.2(a)).

with which USCIS adjudicates matters is committed to agency discretion and thereby precluded from judicial review.

Likewise, the defendants argue that the discretionary nature of adjudicating the plaintiffs' petition and application precludes judicial review under the APA. The APA states that "[t]he reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). On the corollary, the APA does not apply to "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see also Gonzalez v. Cuccinelli*, 985 F.3d 357, 366 (4th Cir. 2021) ("[W]here an agency is *not required* to do something, [the court] cannot compel the agency to act — let alone to act faster."). Similarly, the Mandamus Act grants a district court jurisdiction "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A district court may only issue a writ of mandamus if "(1) the petitioner has shown a clear right to the relief sought; (2) the respondent has a clear duty to do the particular act requested by the petitioner; and (3) no other adequate remedy is available." *In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d 135, 138 (4th Cir. 1988). The defendants address their APA and Mandamus Act claims together.

"The APA establishes a 'basic presumption of judicial review' of agency action." *Lovo v. Miller*, 107 F.4th 199, 205 (4th Cir. 2024) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 190 (1993)); *cf. Kale v. Alfonso-Royals*, 139 F.4th 329, 334 (4th Cir. 2025) ("[W]hen a statutory provision is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review.") (internal quotation marks and citations omitted). "The presumption can only be overcome by clear and convincing evidence of congressional intent to preclude judicial review." *Lovo*, 107 F.4th at 206 (internal quotation marks and citations omitted); *see also* 5 U.S.C. § 701(a) (prohibiting judicial review under the APA when a statute precludes such review, or when agency action is committed to agency discretion). Therefore, whether this court has subject-matter jurisdiction will turn on whether USCIS has a mandatory duty to adjudicate the plaintiffs' immigration forms and the alleged delay in adjudication is not a "decision or action" under the INA.

## C. Nondiscretionary Duty.

"To assess whether an agency is bound to act, we first look to the text of the relevant statutes and regulations." *Lovo*, 107 F.4th at 211. Language such as "may" is generally interpreted as permissive, while language such as "will" is

"unmistakably mandatory" and "can provide sufficient evidence of the unequivocal command required for [courts] to hold that an agency is compelled to act." *Id.*

I will first turn to whether USCIS has a nondiscretionary duty to adjudicate I–130 petitions. The adjudication of a petition filed by a U.S. citizen on behalf of a noncitizen relative is governed by 8 U.S.C. § 1154(b), which states that "the Attorney General *shall* . . . approve the petition." (emphasis added). A plain-text reading of this language indicates that there is a nondiscretionary duty to adjudicate such petitions. Moreover, as the plaintiffs note, USCIS's own policy manual states that, "[i]f the petitioner properly files the [I–130] petition in accordance with regulations and the form instructions and demonstrates they meet eligibility requirements, then USCIS *must* approve the petition." USCIS Policy Manual, Vol. 6, Pt. B, Ch. 5 (May 8, 2026) (emphasis added). The policy manual also clarifies that, "[g]enerally, there is no discretionary analysis as part of the adjudication of a family-based immigrant petition, and USCIS cannot deny these petitions as a matter of discretion." *Id.* Further, when discussing the ability of USCIS to revoke approved petitions for good and sufficient cause, the policy manual specifies that "[t]his discretion is provided by statute and is not subject to judicial review." *Id.* It is reasonable to infer that the policy manual would have also specified if adjudication of I–130 applications was discretionary and not subject to judicial review. The defendants fail to address any of these findings.

District courts have also held that USCIS has a nondiscretionary duty to adjudicate I–130 petitions. *See, e.g.*, *Ayanbadejo v. Chertoff*, 517 F.3d 273, 278 (5th Cir. 2008) (per curiam) ("Determinations regarding the validity of marriage for I–130 petition purposes are not discretionary within the meaning of § 1252(a)(2)(B), and thus are subject to review by courts."); *Koier v. U.S. Citizenship & Immigr. Servs.*, No. 24-CV-1441-bhl, 2025 WL 2605936, at *3 (E.D. Wis. Sept. 9, 2025) ("[T]he Court agrees with Plaintiffs that the USCIS has a mandatory duty to verify and approve a Form I-130 petition within a reasonable time and the Court therefore has subject matter jurisdiction to review Plaintiffs' claims."); *Zizi v. Bausman*, 306 F. Supp. 3d 697, 707–08 (E.D. Pa. 2018), *aff'd sub nom. Zizi v. Field Off. Dir.*, 753 F. App'x 116 (3d Cir. 2019) (unpublished) ("[T]he approval of the I–130 petition is discretionless insofar as it requires the Attorney General to act once the requirements have been met."); *cf. Salami v. Noam*, No. 1:25CV405, 2025 WL 3240587, at *4 & n.3 (M.D.N.C. Nov. 20, 2025), *appeal dismissed*, No. 25-2489, 2026 WL 925723 (4th Cir. Jan. 21, 2026) (unpublished) (suggesting that the plaintiff could have established that USCIS had a clear duty to adjudicate his I–130 petition if he had relied upon 8 U.S.C. § 1154(b) in his briefing).

The defendants argue that the Fourth Circuit's decision in *Lovo* is instructive. There, the plaintiffs filed suit under the APA and Mandamus Act alleging that USCIS had unreasonably delayed adjudication of a provisional unlawful presence

waiver application that had been pending for two years.  107 F.4th at 202.  The court

held that it lacked subject-matter jurisdiction because neither the relevant provision

of the INA nor its implementing regulations mandated USCIS to adjudicate the

application.  *Id.* at 212–13.  I find that *Lovo* is distinct from the present case.

First, the parties in *Lovo* agreed that the statutory provisions of the INA

governing the adjudication of provisional unlawful presence waiver applications do

not mandate adjudication.  The relevant portion of the INA states:

> [T]he [Secretary] has sole discretion to waive [an applicant's
> disqualifying unlawful presence] in the case of an immigrant who is the
> spouse . . . of a United States citizen . . . if it is established to the
> satisfaction of the [Secretary] that the refusal of admission to such
> immigrant alien would result in extreme hardship to the citizen or
> lawfully resident spouse or parent of such alien. *No court shall have
> jurisdiction to review a decision or action by the [Secretary] regarding
> a waiver under this clause*.

*Lovo*, 107 F.4th at 206 (quoting 8 U.S.C. § 1182(a)(9)(B)(v)).

Similarly, in this case, the plaintiffs are not arguing that 8 U.S.C.

§ 1252(a)(2)(B) requires adjudication of their petition and application — they

concede that the INA grants USCIS discretion to ultimately grant or deny the

immigration forms at issue.  Rather, with respect to the I–130 petition, the plaintiffs

here argue that a different statutory provision of the INA requires adjudication.  *See*

8 U.S.C. § 1154(b) ("[T]he Attorney General *shall* . . . approve the petition . . . .")

(emphasis added).  As I noted above, the defendants do not address this language.

Second, the *Lovo* court found that regulations implementing 8 U.S.C. § 1182(a)(9)(B)(v) also failed to establish that USCIS was required to adjudicate provisional unlawful presence waiver applications.[7] *Lovo*, 107 F.4th at 212–13. For instance, one such implementing regulation provided that "USCIS *may* adjudicate applications for a provisional unlawful presence waiver of inadmissibility." 8 C.F.R. § 212.7(e)(2)(i) (emphasis added).

Here, on the other hand, the plaintiffs allege that USCIS has a nondiscretionary duty to adjudicate plaintiff Sandoval's I–485 application under 8 C.F.R. § 245.2(a)(5)(i), which governs the adjudication of an application for adjustment of status filed by a noncitizen. The regulation states that "[t]he applicant *shall be notified of the decision* of the director and, if the application is denied, the reasons for the denial." § 245.2(a)(5)(i) (emphasis added).[8] Once again, the defendants fail to address this mandatory language. In any event, there is sufficient support for finding that § 245.2(a)(5)(i) imposes a nondiscretionary duty on USCIS to adjudicate I–485 applications.

---

[7] A regulation can require agency action even if a statute does not. *Lovo*, 107 F.4th at 212.

[8] The plaintiffs do not contest that the ultimate decision of USCIS to grant an I–485 application is discretionary. *See* 8 U.S.C. 1255(a) (stating that an application for adjustment of status "may" be granted).

The *Lovo* dissent lends support for this finding.    While 8 C.F.R. § 245.2(a)(5)(i) was not at issue in *Lovo*, the dissenting opinion referenced the regulation when noting that the "shall be notified of the decision" language of § 245.2(a)(5)(i) suggests that USCIS has a mandatory, nondiscretionary duty to adjudicate.  107 F.4th at 221 (Diaz, C.J., dissenting).  The dissent then explained that the "will notify" applicants of "the decision" language of 8 C.F.R. § 212.7(e)(9), a regulation at issue in *Lovo*, created a duty on USCIS to adjudicate the application. *Id.*  ("If it were otherwise, why would § 212.7(e)(9) reference '*the* decision,' and not 'any decision' or 'a decision'? We've recognized that 'there is a fundamental difference between the definite and indefinite article.'") (quoting *United States v. McCauley*, 983 F.3d 690, 695 (4th Cir. 2020)).  The *Lovo* majority acknowledged that "[t]he dissenting opinion is correct to recognize that language mandating notification of an agency's ultimate decision can create a requirement to adjudicate." *Id.* at 214.[9]

Several district courts have also held that the language of 8 C.F.R. § 245.2(a)(5)(i) imposes a mandatory, nondiscretionary duty on USCIS to adjudicate

---

[9] The majority ultimately concluded that USCIS was not required to adjudicate the provisional unlawful presence waiver application at issue because the agency had enacted other regulations that, when read collectively, "preserve[d] [USCIS's] discretion over whether to adjudicate." *Lovo*, 107 F.4th at 214.  In this case, the defendants have not presented analogous regulations that, when read in conjunction with 8 C.F.R. § 245.2(a)(5)(i), would imply that USCIS has discretion over whether to adjudicate I–485 applications.

I–485 applications.  *See, e.g.*, *Joshua v. Jaddou*, No. 1:24-CV-00667-JRR, 2025 WL 449001, at \*7 (D.Md. Feb. 10, 2025) ("[T]he duty to adjudicate a Form I-485 is non-discretionary.") (internal quotation marks and citation omitted); *Yu v. Brown*, 36 F. Supp. 2d 922, 931 (D.N.M. 1999) ("The language of [§ 245.2(a)(5)(i)] is mandatory not discretionary."); *Linville v. Barrows*, 489 F. Supp. 2d 1278, 1281 (W.D. Okla. 2007) (same).

The defendants also rely on the Fourth Circuit's decision in *Kale v. Alfonso-Royals,* 139 F.4th 329 (4th Cir. 2025), to argue that USCIS retains discretion over whether to adjudicate the plaintiffs' immigration forms.  The defendants cite *Kale*'s finding that, under 8 U.S.C. § 1255(a), "USCIS is not only granted discretion with respect to the ultimate decision on whether to grant adjustment of status.  USCIS also has the discretion to 'prescribe' the regulations that guide its exercise of the discretionary authority."  *Id.* at 335.  I do not find this language, or the *Kale* decision overall, to be inconsistent with this court's holding today.  Rather, I interpret this language to mean what it says — that USCIS has discretionary authority over whether to grant or deny adjustment of status and has the discretion to create regulations that guide that same authority.

I find that USCIS has a nondiscretionary duty to adjudicate the plaintiffs' I–130 petition and I–485 application.

### D.  Decision or Action.

I must also consider whether the alleged delay of adjudication constitutes a "decision or action" under 8 U.S.C. § 1252(a)(2)(B) so as to preclude judicial review.[10]  In *Lovo*, the Fourth Circuit found that a delay in USCIS processing of a noncitizen's provisional unlawful presence waiver application was not a "decision or action" under the INA.  107 F.4th at 210; *cf.* *Kale*, 139 F.4th at 334–36 (explaining that implementation of the adjudication hold policy at issue was a "decision or action" because USCIS used its discretion to devise the policy and apply the policy to the plaintiffs' applications rather than opting to deny them outright). As in *Lovo*, I find that the alleged delay in adjudicating the plaintiffs' immigration forms is not a "decision or action" under § 1252(a)(2)(B).  Because USCIS also has a nondiscretionary duty to adjudicate the plaintiffs' immigration forms, I find that this court has subject-matter jurisdiction over the plaintiffs' claims.[11]

### E.  Unreasonable Delay.

The defendants alternatively argue that, even if this court has jurisdiction over this action, the plaintiffs have failed to sufficiently plead that the alleged delay in adjudication is unreasonable as a matter of law.  As the Fourth Circuit has found, however, "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." *Gonzalez*, 985 F.3d at 375.

Here, as in *Gonzalez*, the "[p]laintiffs have pled sufficient facts to show that their interests are weighty, implicate health and welfare, and are harmed by the long wait." *Id.* For example, the FAC alleges that, in November 2022, the Department of Homeland Security (DHS) placed plaintiff Sandoval in removal proceedings and charged him as an "arriving alien." As an "arriving alien," the plaintiffs allege that USCIS retains full jurisdiction over his application. The plaintiffs also assert that the immigration judge denied plaintiff Sandoval's motion to terminate his proceedings, denied his motion to continue, and ordered his removal. Thus, the plaintiffs argue that, if USCIS fails to adjudicate their forms, and the Board of

---

[10] The plaintiffs correctly note that a failure to act constitutes agency action under the APA. 5 U.S.C. § 551(13). The Fourth Circuit has explained that "Congress's decision to explicitly include the 'failure to act' within the APA's definition of agency action suggests Congress did *not* believe that inaction fell within the ordinary definition of 'action' as used in other statutes." *Lovo*, 107 F.4th at 207. Moreover, "the term 'agency action' as used in the APA is a term of art" and "there is no indication that Congress incorporated that bespoke definition into the INA generally or into its jurisdictional bars specifically." *Id.* (citation modified).

[11] The defendants cite various district court cases, including a prior Western District of Virginia opinion, in which courts have declined to review the pace at which USCIS adjudicates applications under 8 U.S.C. § 1252(a)(2)(B). *See, e.g.*, *Zhang v. Chertoff*, 491 F. Supp. 2d 590, 593–94 (W.D. Va. 2007) (Moon, J.) ("A holding that USCIS does not have discretion over the pace of application processing would lead to the illogical conclusion that USCIS must reach an unreviewable decision within a reviewable period of time."); *Dosmetova v. U.S. Citizenship & Immigr. Servs.*, No. 3:24-7409-SAL-PJG, 2025 WL 1663661, at *2–3 (D.S.C. Feb. 7, 2025) (collecting cases within the district that have interpreted the INA as divesting courts of subject-matter jurisdiction over challenges to processing delays by USCIS). I am not bound by these decisions, and in any event, I find that the recent Fourth Circuit decisions discussed herein establish this court's jurisdiction over the present matter.

-16-

Immigration Appeals issues an adverse decision, plaintiff Sandoval may be removed from the United States and lose his opportunity to adjust his status.  *See* 8 C.F.R. § 245.1(a) (stating that a noncitizen must be "physically present in the United States" to be eligible for adjustment of status).  FAC ¶¶ 22–25, Dkt. No. 7.  Therefore, at this stage of litigation, I decline to resolve whether the USCIS has unreasonably delayed adjudication of the plaintiffs' proceedings.

DATED:   June 23, 2026

/s/  JAMES P. JONES
Senior United States District Judge

-17-